TEXAS & N. O. R. CO. v. OWENS et al.

No. 2181.

Court of Civil Appeals of Texas. Beaumont.

Oct. 28, 1932.

Rehearing Denied Dec. 7, 1932.

LAWHON, J.

Appellee, Jefferson Pleas Owens, a minor, brought suit by and through his next friend, Delia Roberson, against Texas & New Orleans Railroad Company for damages for personal injuries sustained by him on or about October 17, 1929. He alleges that at the time he sustained such injuries he was twelve years old. In his petition he alleged that he lived with Delia Roberson, his guardian, who resided at 2220 Crockett street in the city of Beaumont, Jefferson county, Tex.; that on October 17, 1929, he was directed by Delia Roberson to go to 2130 Rusk street, in the city of Beaumont, to get the mail and bring it back. He started on this mission early in the morning. He alleged that the best and most practicable way to make this trip was to go from his home on Crockett street to Fourth street, and thence north on Fourth street across the tracks of the Texas & New Orleans Railroad Company about two blocks; that as he passed over the railroad tracks across Fourth street he saw approaching from the west, about 100 feet from the crossing, a long freight train pulling into the city of Beaumont; that the train was pulled across Fourth street and was stopped, completely blocking the crossing; and that the train extended several blocks both east and west of this crossing and remained standing more than ten minutes. It is stated in the petition that such blocking of the crossing was in violation of the ordinances of the city of Beaumont and article 787 of the Penal Code of the State of Texas. He alleges that he went on to the place where he was to get the mail and returned to the crossing at Fourth street and the train was standing blocking all passage; that there were a number of automobiles standing waiting for the train to clear the crossing, and that after waiting several minutes he saw some working men climb through between the cars, and as he was anxious to get home in time to go to school he climbed between two of the cars in the standing train, using all possible care for his safety, but that while climbing between the cars the train was put in motion without the ringing of the bell of the engine or blowing the whistle and without any of the employees of the defendant or any other person giving any warning that the train was about to start; that the train started with a terrific jerk, and he was thrown to the tracks below and the cars ran over his legs, cutting one off just below the knee and the other just above the knee. The petition recites that Fourth street is a much-traveled street and connects the north and south sides of the city, and that there are several blocks to the east of Fourth street before any other street is found running from the north to the south side of the city, and it is the last street to the west running from the north to the south side; that this section of the city is

F. J. & C. T. Duff and Lamar Cecil, both of Beaumont, and Baker, Botts, Andrews & Wharton, of Houston, for appellant.

Renfro & Keen, of Beaumont, for appellee.

thickly populated and there are many industrial plants located in that neighborhood. It was further alleged that the freight trains of the defendant railroad habitually and willfully blocked this crossing for more than five minutes, this occurring almost daily. This was alleged to be a violation of article 787 of the Penal Code of the State of Texas and article 673 of the Ordinances and Charter of the City of Beaumont. It was further alleged that on occasions when the train would be across Fourth street workmen going to work in that vicinity would climb between the cars in order to avoid being late, and that in so crossing through the trains they were acting upon the invitation, or at least the implied invitation, of the employees of the defendant railroad company. It was alleged that it was a custom and habit for persons to climb between the cars of this train at Fourth street in the presence of defendant's employees and trainmen, and that such employees raised no protest or objection to persons climbing between the cars at the crossing and acquiesced in such conduct, and it was common knowledge to trainmen and people working in the vicinity that the train would block the crossing about the same time every morning; and that the plaintiff, Jefferson Pleas Owens, in climbing between the cars on this occasion, was doing what he had seen others do on various occasions. Numerous acts of negligence are alleged, but several of them are repetitions. Briefly, it is alleged that on account of the custom and acquiescence of the defendant with reference to people passing between the train on such occasions, the defendant was negligent in failing to warn the public at this place that the train was about to start; that the defendant was negligent on this occasion in willfully blocking the crossing between 6 and 7 o'clock in the morning, in violation of the Penal Code and the ordinances of the city of Beaumont; that it was negligent in blocking the crossing for more than five minutes, in violation of the ordinances of the city of Beaumont and the Penal Code; that the defendant was negligent in habitually blocking the crossing and without objection allowing workmen to pass through the train, and in failing to use ordinary care in managing the train so as to avoid injuries to such persons; that defendant was negligent in failing to keep a watchman at the crossing to warn the people that the train was about to start; it was negligent in failing to blow the whistle or give any warning to persons climbing, or about to climb, through the train that it was about to start, and in failing to ring the bell so as to warn such people; that it was negligent in failing to make inspection to ascertain whether people were passing through the train before the train started; that it was negligent in failing to manage the train in starting it up so as to avoid injury to plaintiff and others.

Defendant answered that the plaintiff boarded the train at the time in question while it was moving, and that he boarded same some distance from the Fourth street crossing and rode the same until he was thrown or fell therefrom; that his climbing on the moving train was a violation of the ordinances of the city of Beaumont, and that his act in climbing on the moving train was recklessness and negligence, and that his action in thus climbing on the moving train was the direct and proximate cause of the injury; plaintiff, by reason of such conduct, was alleged to be guilty of contributory negligence if it should be shown that the defendant was negligent in any of the matters charged against it. It was further alleged that if it was shown that the train was still at the time he climbed on the same, he did so knowing that it might be moved at any time and that such acts on his part was contributory negligence. It was further alleged that it was against the rules of the defendant company to permit any one other than employees to ride upon its freight trains, and that plaintiff knew that he had no authority or right to get on the train, either for the purpose of crossing between the cars or getting on the cars, or for the purpose of riding on the same, and that his acts in this respect were negligent, and were pleaded in bar of his recovery.

The case was submitted to a jury on special issues, and on the findings of the jury the court rendered judgment against appellant in the sum of $20,440; $440 of this amount being allowed for doctors', hospital, and nurses' bills; $20,000 being allowed for the injuries plaintiff sustained to his person. Appellant has assigned numerous errors which it claims were committed in the trial of the case. We will not undertake to discuss them in their order, but will try to dispose of the material issues raised.

The appellant very vigorously insists that the court should have given the defendant an instructed verdict, contending that the evidence, as a matter of law, showed that plaintiff was guilty of contributory ngeligence. There is evidence in the record showing that the railroad company brought a long freight train into Beaumont from the West each morning along about 6 or 7 o'clock, and that this freight train was stopped so that the Fourth street crossing would be blocked; that the train would be cut in two parts and the front part pulled down into the yards, the remainder being left stationary, and usually the part of the train left would block this crossing. The regular locomotive attached to the train, or a switch engine, would later come back and pull the remainder of the train down into the yards. There is evidence to the effect that this crossing would be blocked from five to fifteen minutes, or longer, almost every morning about the time men were going to

their work in industrial plants in that vicinity of the city and in other places in the city. Several witnesses testified that they had seen, on various occasions, men climb .between the cars at this crossing and pass on to the other side of the train, and while no one testified that the operatives of the train actually knew that this was being done, it is in evidence that sometimes trainmen would be in the neighborhood where they could have seen. The plaintiff introduced an ordinance of the city of Beaumont which prohibits trains from blocking street crossings more than five minutes, and also pleaded and introduced article 787 of the Penal Code, making it a violation of the law to block a street crossing for more than five minutes. Appellant also introduced in evidence an ordinance of the city of Beaumont and article 1673 of the Penal Code, making it illegal for any person to board trains or ride trains for any purpose other than to become passengers, or for the purpose of transacting business. Appellant contends that plaintiff, in crossing between two of the cars, was a trespasser and his act in so crossing was in such disregard of his safety that it was the duty of the court to instruct the jury that he was guilty of contributory negligence.

Appellant also contends that the custom of people crossing in the same manner could not be any justification for his negligence. The case of Texas & N. O. Ry. Co. v. McLeod, 62 Tex. Civ. App. 270, 131 S. W. 311, was dealing with a state of facts very similar to this case. There the plaintiff was a minor fourteen years of age, and the train had obstructed the crossing for about ten minutes. It was in evidence that he did not know there was an engine attached to the cars. It will be recalled that in this case it was shown that the locomotive attached to the train had taken part of the cars up into the yard and there was nothing to show that the plaintiff knew that the train had a live engine attached to it. There the train started without ringing the bell or sounding the whistle or giving any signal, and the court held that the question of contributory negligence was one for the jury. Appellant says that the facts of the McLeod Case are not similar to the facts in this case, but if they are, this case has been overruled by the decision in Fort Worth & D. C. Railway Co. v. Bell (Tex. Civ. App.) 14 S.W.(2d) 856, 859. The Bell Case quotes from Weatherford, M. W. & N. W. Ry. Co. v. Thomas (Tex. Civ. App.) 175 S. W. 822, as follows: "It will be sufficient to here say that we think it will be found, generally speaking, that in those cases where the courts have declared a party guilty of negligence as a matter of law, in attempting to cross a railway track between cars to which is attached a live engine, there is an absence of justifying or excusing circumstances." In the Bell Case the authorities are reviewed at considerable length and the case of T. & N. O. R. R. Co. v. McLeod is

discussed, and the court there makes a distinction between the facts of the McLeod Case and the Bell Case and, as we interpret the decision, holds that there were "justifying or excusing circumstances" which prevented the plaintiff being guilty of contributory negligence as a matter of law. The case of Weatherford, M. W. & N. W. Railway Co. v. Thomas (Tex. Civ. App.) 175 S. W. 822, is somewhat similar to the case under consideration. There a custom was shown whereby shippers of cattle were in the habit of crossing between cars of standing trains to look after their shipments and to see to their contracts for transportation and other business. It was contended that a person is guilty of negligence, as a matter of law, in attempting to cross between cars in a train which obstructed his further progress when he knows that an engine is attached to the train and is liable to start at any moment. The court held that this was a question for a jury, although the evidence showed that the people so passing through the trains would have had to walk only a short distance in order to pass around the end of such train. The case of San Antonio & A. P. Ry. Co. v. Bergsland, 12 Tex. Civ. App. 97, 34 S. W. 155, 157, in our opinion, is in point on the proposition that the plaintiff's negligence in crossing between the cars, as a defense, was one for the jury. This also was the case of a minor. The court said: "A train left standing on the crossing for the length of time shown was likely to cause a boy of the tender age of appellee's son to attempt to cross it, and with no watchman to stop him and warn him of his danger, the accident to the boy was the natural consequence of the negligent use of the crossing."

▆▆▆ The plaintiff in this case testified that before he attempted to go through the train from the north side to the south side, he saw a number of adult workmen crossing and that he thought it would be safe for him to go across. People at the crossing were not trespassers, and plaintiff's theory was that the injury occurred at the crossing. There was evidence introduced by appellant that the plaintiff boarded the train some distance from the crossing while it was moving, but in passing upon the question of an instructed verdict we are required only to consider the plaintiff's testimony. When we consider the age of the boy, the continued blocking of the crossing from day to day, and the custom of other people passing through the train, we cannot say that plaintiff was guilty of negligence as a matter of law.

▆▆▆ Appellant contends that the introduction of the ordinance of the city of Beaumont was erroneous and that proof of a custom would not justify the plaintiff's conduct and that the court erred in admitting testimony on these issues. It is also asserted that there was error in submitting to the jury issues of custom in blocking the crossing and custom

of people passing through the train. We believe the cases we have referred to on the issue of contributory negligence dispose of appellant's objections. In nearly all of these cases the blocking of crossings and violation of ordinances were involved and the question of custom of people passing through the train at such crossings was given consideration. We cite the following cases, most of which have already been referred to: Chicago, R. I. & G. Railway Co. v. Johnson, 101 Tex. 422, 108 S. W. 964; T. & N. O. Ry. Co. v. Bean, 55 Tex. Civ. App. 341, 119 S. W. 328; Weatherford, M. W. & N. W. Railway Co. v. Thomas (Tex. Civ. App.) 175 S. W. 822; T. & N. O. Ry. Co. v. McLeod, 62 Tex. Civ. App. 270, 131 S. W. 311; San Antonio & A. P. Railway Co. v. Bergsland, 12 Tex. Civ. App. 97, 34 S. W. 155.

▇ The court submitted to the jury special issue No. 10, as follows: "Did the defendant, Texas & New Orleans Railway Company, by its servants, block the 4th Street crossing on the morning of October 17th, 1929, just prior to the time plaintiff, Owens, undertook to climb between the cars, with one of its freight trains by permitting the same to stand on and across the 4th St. crossing for more than five minutes, then put the said train in motion without warning of any kind? Answer Yes or No as you find the fact to be." The jury answered this issue in the affirmative, and in response to special issues 11 and 12 found that the matters mentioned in No. 10 was negligence and was a proximate cause of the injuries. Appellant objected to these issues on the ground that they were duplicitous and multifarious. We believe this is a sound objection. But by reason of other issues being submitted and the answers of the jury, we are not prepared to say that this would require a reversal of the judgment. It will be observed that issue No. 10, quoted above, requires the jury to determine whether the defendant railroad company (a) blocked the Fourth street crossing on the morning in question, (b) whether the train blocked the crossing more than five minutes, and (c) whether the train was put in motion without warning of any kind. This undoubtedly submitted several issues of fact, some of which might be answered yes and some no; but the jury is required to answer all of them together, yes or no. The court, in special issue No. 4, submitted to the jury the question of whether the train stood across Fourth street more than five minutes, to which the jury answered, "Yes." Issue No. 7 submitted to the jury the question of whether any warning was given before setting the train in motion. There is no dispute that the train did block the crossing on the morning in question. The fact that these controverted questions were submitted to the jury in other issues, we believe, renders harmless the method of submitting issue No. 10. Appellee contends that the negligence, as submitted in these issues, consists of blocking the train more than five minutes and starting without warning, and that this is one act of negligence. The case of Chicago, R. I. & G. Ry. Co. v. Johnson, 101 Tex. 422, 108 S. W. 964, 966, seems to sustain appellee's contention. The facts in that case are very similar to the case under consideration. Judge Speer, then on the Court of Civil Appeals, in a dissenting opinion, said: "The blockading of the street and the negligent starting of the cars in motion are so interwoven as to constitute an inseparable act of negligence, and it would be improper to attempt to separate them and inquire whether either alone was the sole proximate cause." The Supreme Court, in answering certified questions, followed the dissenting opinion of Judge Speer. Judge Speer quotes from the case of Burger v. Missouri Pacific R. R. Co., 112 Mo. 238, 20 S. W. 439, 34 Am. St. Rep. 379, as follows: "The negligent and unlawful obstruction of the street continued until the negligent starting of the cars commenced, and the two alleged causes of the injury were not separable in the sense that one only would be the proximate cause of the damage." In the cases of St. Louis S. F. & T. Ry. Co. v. Wilson, 279 S. W. 808, the Commission of Appeals reversed and remanded a case because the court submitted a single fact by two separate issues. In that case the defendant was an employee of the railway company and his duties required him to work between cars, but it was his duty to put out a blue light so that other employees would know that he was between the cars. It was charged that at the time he was injured he went between the cars to work but did not put out a blue light. The court submitted as one issue the question of whether he was guilty of negligence in failing to put out the blue signals on the occasion he was injured, and in another the issue was submitted as to whether he was guilty of contributory negligence in going between the cars. The court held that this was error and that both acts constituted one act of negligence. We are of the opinion that it was not error to submit the combined acts in blocking the crossing for more than five minutes and starting the train without warning as an act of negligence and as a proximate cause of the injury, the jury already having found under other issues that the crossing had been blocked more than five minutes and that the train was put in motion without warning.

The trial court submitted to the jury in issue No. 7 the question of whether the agents of the defendant gave any warning before setting the train in motion, to which the jury answered, "No." Issue No. 8 asked the jury to find whether such failure to give warning was negligence, and under issue No. 9 whether such negligence was a proximate cause of the injury. Under issue No. 10 the jury was requested to answer whether the defendant blocked the crossing at Fourth street more

than five minutes, and then put the train in motion without warning, to which the jury answered in the affirmative, and in issue No. 11 the jury was asked whether such act on the part of the railroad company was negligent, and under issue No. 12 whether such negligence was a proximate cause of the plaintiff's injury. Under issue No. 17 the jury was requested to find whether the railway company made an inspection to find whether plaintiff was climbing between the cars, and in issue No. 18 was asked whether the failure to make such inspection was negligence, and in issue No. 19 whether such negligence was a proximate cause of plaintiff's injury. Under special issue No. 20 the jury was asked to find whether the defendant exercised ordinary care in moving and managing its train, and under issue No. 21 was requested to find whether the failure to use ordinary care in the moving and managing of the train was negligence, and under special issue No. 22 they were requested to find whether such negligence was a proximate cause of plaintiff's injury. The jury answered all these questions favorable to plaintiff.

██ The court defined "proximate cause" and "new and independent cause" as follows:

"(c) 'Proximate Cause,' as used in this charge, is that cause which in natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred, and the risk of which could or should have been reasonably anticipated or foreseen by the use of ordinary care in the light of the attending circumstances."

"(d) 'A new and Independent Cause' is an intervening efficient force which breaks the *casual* connections between the original wrong and the injury. Such new forces must be sufficient of itself to stand as the cause of the injury and be one but for which the injury would not have occurred. The term 'new' refers to and means a cause incapable of being reasonably foreseen by the original wrong-doer by the use of ordinary care on his part, and the word 'Independent' refers to and means the absence of the relation of cause and effect between the new cause and the original wrongful act or omission, and unless the intervening cause is thus both new and independent, sufficient of itself to stand as the cause of the injury, breaking the *casual* connection, the original wrongdoer is not relieved from legal responsibility for his wrong or negligence."

Appellant assails these definitions, especially the definition of the term "new and independent cause," where it is stated that a new and independent cause is an intervening efficient force which breaks the "casual" connection between the original wrong and the injury, and the appellant says that the words "casual" and "causal" have entirely distinct meanings, and that the use of

"casual" in this connection was incorrect and would only have the effect of confusing the jury. We believe this objection is well taken. In 11 C. J. 28, "casual" is defined as follows: "As an adjective, happening or coming to pass without apparent cause, without design on the part of the agent, in an unaccountable manner, or as a mere coincidence or accident; happening by accident or brought about by an unknown cause; not designedly brought about; coming by chance; by chance; accidental; fortuitous; indeterminate; unexpected; unforeseen; without regularity; occasional and incidental." Funk & Wagnalls New Standard Dictionary defines "causal" as follows: "Of, pertaining to or constituting a cause; containing or involving a cause; indicating or expressing a cause, causitive." The word "causal" has a very definite legal meaning with reference to the question of proximate cause. In T. & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049, 1052, the Supreme Court, through Judge Williams, in dealing with the question of whether certain negligence was the proximate cause of injury, said: "This fact of causal connection between an alleged negligent act or omission * * * can no more be presumed than can the act or omission itself." In Waterman Lbr. Co. v. Beatty, 110 Tex. 225, 218 S. W. 363, 364, Judge Greenwood said: "Though the violation of the statute would be negligence per se, the action would fail without a showing of proper causal connection between the negligence and the injury." The word, as will be seen, is just the opposite in meaning from an event that occurred "in an unaccountable manner" or as "coming to pass without apparent cause." Appellee says that the use of "casual" did not mislead the jury. We cannot assume that this is true. The reason such terms are required to be defined is that jurors who are untrained in legal phraseology will understand what they mean. It is presumed that they will understand the language of the charge as written. If this is true, then we think the jury might have reached an erroneous opinion as to what the term "new and independent cause" means.

██ Appellee further contends that there are no facts shown in this case which would raise the issue of new and independent cause. He says the defendant was charged with certain specific acts of negligence and defendant charged plaintiff with negligence and contributory negligence, and that if plaintiff was guilty of negligence, or contributory negligence, he could not recover, and if defendant was negligent in blocking the crossing and starting the train in a negligent manner, this would be the proximate cause of the injury and there would be no question of new and independent cause. In other words, we understand appellant says

that the jury having found appellant guilty of acts of negligence charged against it, and the jury having found plaintiff was not guilty of negligence or contributory negligence, therefore there is no issue of new and independent cause. We do not think the finding of the jury on the questions would dispense with the necessity of showing the proximate cause of the injury. In Jones v. Gibson, 18 S.W.(2d) 744, 746, the same contention was made, and the court, in an opinion by Chief Justice Hickman of the Eastland Court of Civil Appeals, disposed of the question in the following language: "To our minds, a holding that, since the jury found the defendants negligent and the plaintiff not negligent, and since there is absent from the record evidence that the injuries were inflicted by some other agency or cause, the question of proximate cause was thereby eliminated, is to practically do away with the well-established doctrine of proximate cause. In all negligence cases in which the plaintiff recovers there is a fact finding of negligence against the defendant, and where contributory negligence is pleaded and in any degree supported by evidence, a fact finding exonerating the plaintiff therefrom." That case was dealing with a suit involving damages by reason of an automobile collision. The trial court failed to define "new and independent cause," although this phrase was used in the definition of "proximate cause." The judgment of the trial court was reversed and remanded on that ground alone. This question has been decided by the Commission of Appeals in Robertson & Mueller v. Holden, 1 S.W.(2d) 570. That was a case of a damage suit growing out of a collision between an ambulance and another vehicle. The trial court in that case defined "proximate cause" in almost the identical language as used by the trial court in this case. The defendant objected to the definition of "proximate cause" on the ground that the term "new and independent cause" was a technical term and required an explanation or definition. A charge on new and independent cause was not submitted. The Commission of Appeals held that it was not necessary to submit a charge because the failure to define "new and independent cause" as a part of the definition of "proximate cause" was affirmative error. In Texas Electric Ry. v. Scott (Tex. Civ. App.) 21 S.W.(2d) 24, "proximate cause" was there defined in almost the identical language as used in this case, but the term "new and independent cause" was not defined. There the defendant objected to the charge on account of the omission of the definition of this term. Several acts of negligence were submitted to the jury, and in each case the defendant was found guilty of negligence and each act of negligence was found to be a proximate cause

of the injury. The Court of Civil Appeals reversed the judgment of the trial court on that ground. The Commission of Appeals, in passing on this case, 32 S.W.(2d) 641, approved the decision of the Court of Civil Appeals and held that the term "new and independent cause" was a part of the definition of "proximate cause," and should have been defined. If it was necessary to define this term in these cases, then it was necessary the term should have been correctly defined. There could be no distinction, in our opinion, made between these cases and the one under consideration. Certainly the issue of proximate cause was involved in this case, and proximate cause cannot be assumed in any case where the facts are such that reasonable minds might differ as to the negligence causing the injury. This is true in cases where the negligence consists of violation of the law which makes the act negligence per se. In Waterman Lmbr. Co. v. Beatty, 110 Tex. 225, 218 S. W. 363, 364, a decision by the Supreme Court, it is held that the employment of a minor to work with dangerous machinery in violation of the statute was not the proximate cause of the injury, as a matter of law. The court says: "There is no doubt that it is essential to the maintenance of an action for damages for a personal injury founded on the violation of a statute, to establish not only a violation of the statute, but that the violation was the proximate cause of the injury." This court passed on almost the identical question in the case of Rio Bravo Oil Co. v. Matthews, 20 S.W.(2d) 342, 348. Associate Justice Walker, now Chief Justice, in discussing the Holden Case, said: "The trial court, in the case just cited, in defining proximate cause, used the term 'new independent cause.' On appeal it was held that this was a technical term, with a well-defined meaning in law, and that the court's refusal to give a proper definition of this term in charge to the jury constituted reversible error. The reasons for this holding were given by Judge Speer in his opinion. In the case before us the term 'efficient intervening cause' was used. While the two terms are not identical in language, appellee does not seek to distinguish their legal meaning, but, as we understand his position, admits that they have the same meaning in law, and that the Holden Case, supra, is in point supporting appellant's proposition of reversible error, provided the issue of proximate cause was in the case."

The charge under consideration was submitted without objection on the part of appellee. It will be noted that the court not only submitted the definitions of the term "proximate cause" and "new and independent cause," but the court submitted to the jury four separate acts of negligence, and requested the jury to find whether such acts

of negligence constituted a proximate cause of the injury. These issues were not objected to by appellee. The Commission of Appeals, in Rosenthal Dry Goods Co. v. Hillebrandt, 7 S.W.(2d) 521, held that where issues had been submitted without objections, the party could not raise the question that there was no evidence to authorize such submission, citing several cases. This decision has been followed in Garrison v. Dallas Ry. & Terminal Co. (Tex. Civ. App.) 33 S.W.(2d) 295, and Central States Power & Light Corp. v. Brown (Tex. Civ. App.) 38 S.W.(2d) 892. We think the facts of this case undoubtedly required a proper definition of the term "new and independent cause," but in any event the trial court, with the acquiescence of appellee, tried the case on the theory that this issue was in the case, and under the decision referred to he cannot now say there was not evidence to justify the giving of the charges complained of.

■■■■ Appellant complains of certain argument made by one of the attorneys for appellee and says that this argument is sufficient to reverse this case. Appellant introduced in evidence an affidavit by the plaintiff stating that he climbed on the train and between the box cars while it was moving and that he did this some distance from the Fourth street crossing. The theory of plaintiff was that he attempted to go between the cars while the train was standing still and at the Fourth street crossing. The plaintiff denied telling the representative of the railway company who secured the statement that the train was moving when he boarded it and that it was not at the crossing. The attorney, in his argument before the jury, was discussing the fact that plaintiff's guardian had not been consulted before the statement was taken. He then said: "Why didn't he go to see this boy's Guardian, or parents, or representative? Mark my words the next time a case of this kind comes up the railroad's claim agent won't go to see a claimant's mother or guardian about a statement, and if you sit on the jury in another case of this kind, you will find that out." The bill of exceptions states that there was no evidence in the record to justify the argument of plaintiff's counsel, nor was there any argument on the part of opposing counsel to provoke the remarks of the attorney. The bill of exceptions further shows that when the attorney used the language quoted above, objection was made by appellant's attorney and the court instructed the jury to disregard this part of the argument. The attorney then stated to the jury, "But you can remember it." On objections the court instructed the jury to disregard this remark also. The argument was improper, and we are not prepared to say that it might not have affected the verdict. The rule is correctly stated in Texas Indemnity Ins. Co.

v. McCurry, 41 S.W.(2d) 215, 217, 78 A. L. R. 760, by the Commission of Appeals, as follows: "The rule is now settled in this state that where improper argument has been indulged in, the adverse complaining party is entitled to reversal of the judgment, as a matter of law, if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted." See, also, Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765. There are cases holding that the fact that the court instructs the jury to disregard the argument does not necessarily cure the error. Texas & P. Ry. Co. v. Rasmussen (Tex. Civ. App.) 181 S. W. 212. As the case will be reversed and remanded on account of the charge on proximate cause and new and independent cause, no doubt this argument will not be repeated on another trial.

Appellant objects to special issues Nos. 17, 18, and 19, as given by the court. Special issue 17 is as follows: "Did the employees of the defendant railway company make inspection to determine whether plaintiff Jefferson Pleas Owens was climbing between the cars of its freight train before it set the same in motion?" Special issue No. 18 asked the jury to find whether the failure to make such inspection was negligence, and special Issue No. 19 submitted the question whether the failure to make the inspection was a proximate cause of the injury. Complaint is made that these issues do not confine the duty of the defendant to make inspection at the crossing, but required it to make inspection of its entire train. There was considerable evidence introduced by appellant that the plaintiff was not injured at the crossing but some distance to the west. Special issue No. 16 did submit to the jury the question of whether the practice of climbing through the cars was such as to require the defendant to make inspection to determine if there were persons crossing its trains at the Fourth street crossing before setting the train in motion. On another trial we think the issue should limit the inspection to the part of the train at the crossing.

■■■ Appellant complains of special issue No. 20, as follows: "If you have found that the freight train, on the 17th of October, 1929, was standing on and across 4th St. for a longer period of time than five minutes, just prior to the time plaintiff, Owens, undertook to climb between the cars, then you are asked this question: Did the defendant, Texas & New Orleans Railway Company, exercise ordinary care in moving and managing its train?" Complaint is made that this issue did not limit the jury to a consideration of the specific acts of negligence alleged and that it amounted to a general charge. We think the issue as submitted is objectionable. Fox v. Dallas Hotel Co.,

111 Tex. 461, 240 S. W. 517; Northern Texas Traction Co. v. Singer (Tex. Civ. App.) 34 S.W.(2d) 920. Appellee answers these objections by saying that appellant did not make these objections in the trial court. Upon an examination of the transcript we do not find that this issue was objected to on this ground. As we understand the rule as laid down in Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920, it is necessary for a party to not only object to the charge but state the exact grounds upon which he is objecting, and must point out a specific error in the charge so that the court may have an opportunity to correct it. This rule was applied by this court in the case of Gaddis v. Junker, 29 S.W.(2d) 911.

For the reasons stated, the judgment of the trial court is reversed and remanded.

O'QUINN, J.

I dissent from the reversal of this case. I think the judgment should be affirmed. The error upon which the reversal is based (the use of the word "casual" in the court's charge) was harmless, and, in my opinion, was not calculated to, nor did it, in any manner influence the finding of the verdict by the jury.