**BURLINGTON–ROCK ISLAND R. CO. v. DAVIS et al.**

No. 3338.

Court of Civil Appeals of Texas. Beaumont.

Jan. 9, 1939.

Rehearing Denied Jan. 18, 1939.

Thompson & Barwise, of Fort Worth, Foster & Williams and C. L. Madeley, all of Conroe, Strong, Moore & Strong, of Beaumont, and Luther Hudson, of Fort Worth, for appellant.

J. J. Collins and C. S. Williams, both of Lufkin, and Pitts & Liles, of Conroe, for appellees.

WALKER, Chief Justice.

This appeal was prosecuted by appellant, Burlington-Rock Island Railroad Company, from a judgment of the district court of Montgomery County in favor of appellee, Mrs. Bettie Chambless Davis, for damages for the death of her husband who was struck and killed on the 3d day of December, 1936, at Dacus, in Montgomery County, by one of appellant's passenger trains, as he attempted to drive his automobile across appellant's tracks, and for damages for the destruction of his automobile. All acts of negligence and proximate cause, plead by appellee against appellant and submitted to the jury, were found in her favor, and her damages for the death of her husband were assessed at the sum of $17,091.65, and for the destruction of his automobile at $390. All defensive issues were found against appellant.

The court gave in charge to the jury the following definition of "proximate cause" and "new and independent cause."

"4. By the term 'proximate cause' as herein used, is meant that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces the result complained of, and without which that result would not have occurred, and which result, or a similar one, ought to have been reasonably foreseen or anticipated by a person of ordinary care and prudence, in the light of the attendant circumstances.

"5. By the term 'new and independent cause' as used in the foregoing definition of the term 'proximate cause' is meant an intervening efficient force, act or omission, which breaks the causal connection between the original act or force and the injury. Such new force, act or omission, must be sufficient of itself to stand as the cause of the injury, and be one but for which the injury would not have occurred;

"The term 'new' refers to and means a cause incapable of being reasonably foreseen by the original actor by the use of ordinary care on his part;

"And the word 'independent' refers to and means the absence of the relation of cause and effect between the new cause and the original act or omission.

"6. By the term 'natural and continuous sequence' is meant the orderly happening or succession of events in accordance with the laws of nature.

"By the term 'causal connection' as used in the definition of 'new and independent cause,' is meant the existence of the relation of cause and effect."

Appellant assigns that the element of the court's definition of "new and independent cause": "Such new force, act or omission, must be sufficient of itself to stand as the cause of the injury, and be one but for which the injury would not have occurred;" was erroneous:

(a) " * * * because it is not necessary that the new cause be sufficient of itself to stand as the cause of the injury, if it breaks the chain of causation between the original conduct and the result, and produces a different result that could not have been reasonably anticipated."

(b) " * * * because such definition was incorrect, not a proper definition, and

was likely to lead the jury to believe that in order for a new cause to break the chain of causation, it had to be the sole cause of the injury; that is, that the new cause of itself had to be sufficient, standing alone, to cause the injury,

(c) "* * * because by requiring that the new cause be sufficient of itself to stand as the cause of the injury, it prevented the jury from considering the defendant's theory of the case which was that the defendant only created a condition or gave rise to the occasion which made the injury possible, and that its conduct was only the prior or remote cause, because, the conduct of the deceased in driving on the track immediately ahead of defendant's approaching train, on which the loud horn was being continuously sounded, was a new cause which produced a result which the defendant could not have reasonably anticipated, and that, therefore, the deceased's conduct was a new and independent cause and prevented the defendant's conduct from being the proximate cause of the collision."

This charge has been before this court in the following cases: Stedman Fruit Co. v. Smith, Tex.Civ.App., 28 S.W.2d 622; Texas & N. O. Railroad Co. v. Owens, Tex.Civ.App., 54 S.W.2d 848; McDaniel Bros. v. Wilson, Tex.Civ.App., 70 S.W.2d 618, 619; Gulf States Utilities Co. v. Moore, Tex.Civ.App., 73 S.W.2d 941; but, in these cases, the very points now before us were not assigned. The language of the definition assigned as erroneous has support in the following proposition announced by our Supreme Court in Seale v. Gulf C. & S. F. Ry. Co., 65 Tex. 274, 57 Am.Rep. 602: "It is generally held, however, that if, subsequent to the original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote."

We know of no Texas decision that has criticized the Seale Case on this point, but it has been cited and the proposition has been approved. We quote as follows from 30 Tex.Jur. 710:. "And the rule is stated that if, subsequent to the original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote. It is said: 'Our courts have at all times recognized that the primary or original negligence of one actor in an accident may be superseded by a new intervening cause.' Again: 'A new and independent cause disconnected from the original cause operating in itself may intervene to produce a certain result and break the chain of sequence, and become in itself the direct and proximate cause of an injury.'"

We would condemn the charge if it instructed the jury that the new and independent cause "had to be the sole cause of the injury," as appellant construes the term "sole cause." We quote from appellant's brief: "By that definition, the jury was told that regardless of what else the new cause might amount to, it could not be a new and independent cause, unless it was sufficient of itself to stand as the cause of the injury. Even if the jury believed that the new cause had broken the chain of causation between the defendant's conduct and the injury, and had produced a result which could not have been reasonably anticipated as likely to occur, they could not find that such new cause was a new and independent cause, unless they further believed that the new cause was sufficient of itself to stand as the cause of the injury. In other words, they had to believe that the new cause was the sole cause of the injury. The language used means, and can only mean that the new cause standing alone (of itself) must have been sufficient to have caused the injury. In order to meet the requirements of the court's definition, the new cause had to be the only cause, the sole cause, or a cause which alone was sufficient to cause the injury. * * * If that be a correct requirement, then there is no such thing as new and independent cause, for the question of new and independent cause can never arise except where there are several causes, and the question to be determined is which or how many are proximate causes, and which or how many are remote causes. The point we are trying to make is that without a prior cause which in some way contributed to the injury and without which the injury would not have happened, there would be no need or necessity for new and independent cause. It is only where something the defendant has done or left undone together with other causes resulted in an injury to the deceased, that the question of new and independent cause arises, and after that matter is established, the question is whether the defendant's conduct which resulted in the injury, was the proximate cause of the injury. * * * As we have

above stated, to require a new and independent cause to be 'sufficient of itself to stand as the cause of the injury,' is at variance with the settled conception of new and independent cause."

In our judgment, the charge was not subject to the construction placed upon it by appellant. That appellant's train struck the automobile of the deceased and killed him was conceded on the trial. The issue before the jury was: What caused the train to collide with the automobile? Appellee plead that appellant was guilty of certain acts of negligence which constituted the proximate cause of the collision. Under the court's charge, before that issue could be found against appellant, the jury had to find that the chain of causation, predicated on appellant's alleged negligence, was not broken by a new and independent cause, that is, that no intervening force, act or omission broke the causal connection between the original act or force—the alleged negligence against appellant—and the injury. Though the jury might have found negligence against appellant, under the charge it could not have found against it on the issue of proximate cause if a new, efficient force broke the chain of causation. The jury was not required to find that the new force killed Mr. Davis—it was conceded that appellant's train killed him—but that it caused appellant's train to kill him; that, because of the intervention of this new force appellant's train would have collided with the deceased's automobile and killed him, even if appellant was negligent in any or all of the respects charged by appellee's petition. The charge did not instruct the jury that the intervening force must be the sole cause of the injury, but only that it "must be sufficient of itself to stand as the cause of the injury." The charge sent to the jury all evidence raising the issue of an intervening force. And if, as appellant insists by its proposition (c), "the conduct of the deceased in driving along the track immediately ahead" of its train was a new cause which produced a result the defendant could not have reasonably anticipated—the death of Mr. Davis—then the deceased's conduct was a new and independent cause within the court's definition. Appellant's proposition (a) is not an accurate statement of the law; if the new force breaks the chain of causation, "and produces a different result that could not have been reasonably anticipated," quoting from the proposition, then it is, in law, sufficient of itself to stand as the cause of the injury. The language complained of by appellant comes to us from the decisions of our ablest judges in defining "new and independent cause." We think its long recognition as a correct proposition of law by the courts of this State answers appellant's proposition: "After a thorough search, we have been unable to find a case in which new and independent cause was raised, where the new and independent cause, of itself was sufficient to stand as the cause of the injury."

The deceased, J. C. Davis, was a mail carrier, sixty-four years of age at the time of his death. At sixty-five years of age he had the right to retire on an annual pension of $920 as long as he lived. Appellee testified that her deceased husband owned a farm of 310 acres, seven or eight miles northeast of his home, which was farmed by tenants. Then she gave the following additional testimony:

"Q. Do you or not know what plans he had in mind with reference to his farming in later years, did he talk with you, and did you know what he planned to do with reference to that?

"Mr. Hudson: We object to that as being too speculative.

"The Court: Overruled.

"Mr. Hudson: Note our exception.

"Q. Do you know what plans he had in mind, or had talked with you, or was looking forward to doing? A. Yes, sir.

"Q. What was it? A. He had planned to have a ranch out of his farm, he was going to stock it with cattle and hogs and have him a ranch up there.

"Mr. Hudson: Our objection goes to all of that as being too speculative."

This testimony was not subject to the objection that it was "too speculative"; nor did the court err in refusing to instruct the jury to disregard it. The deceased had the right to retire when he reached the age of sixty-five years, on an annual pension of $920. After his retirement, his time was his own. He was not required by law to spend the rest of his life in idleness, but it was his right to engage in productive work. Had the deceased planned to do nothing all the balance of his life; had he been an invalid and not able to work; had he been without means to keep him in a gainful

occupation, then these circumstances would have been available to appellant; so, the affirmative of these matters was available to appellee. Certainly, appellant was not prejudiced by the testimony to the effect that the deceased planned to make a ranch out of his farm, and to stock it with cattle and hogs.

■ The issue of discovered peril was submitted to the jury by the following questions, all of them answered in the affirmative:

(1) "Do you find, from a preponderance of the evidence, that defendant's engineer discovered the presence of the deceased, J. C. Davis, at the crossing in question before the collision?

(2) "Do you find, from a preponderance of the evidence, that defendant's engineer after discovering the presence of the deceased, J. C. Davis, at said crossing, if he did, realized that he was in a perilous position at the time of such discovery?

(3) "Do you find, from a preponderance of the evidence, that the defendant's engineer after discovering the presence of the deceased, if he did, realized that he could not or would not likely remove himself from danger in time to avoid injury?

(4) "Do you find, from a preponderance of the evidence, that defendant's engineer made such discovery and realization in time to, by the exercise of ordinary care, by the use of the means at his command, that is to say by blowing the whistle, ringing the bell, sounding the sirene, stopping or reducing the speed of the train, having due regard for his own safety and that of his train, its passengers and crew, have avoided injuring the deceased, J. C. Davis?

(5) "Do you find, from a preponderance of the evidence, that defendant's engineer after making such discovery and realization, if he did, failed to exercise ordinary care, by the use of the means at his command, that is, by blowing the whistle, ringing the bell, sounding the sirene, stopping or reducing the speed of the train, having due regard for his own safety and that of his train, its passengers and crew, to avoid injuring the deceased, J. C. Davis?

(6) "Do you find, from a preponderance of the evidence, that such failure, if any upon the part of defendant's engineer was a proximate cause of the death of J. C. Davis?"

Dallas Railway Co. v. Redman, Tex. Civ.App., 113 S.W.2d 262, denies appellant's proposition that, in submitting question No. 2, the court erred in refusing to define the term "perilous position." Nor was that issue defective on the ground that it failed to give to the jury "the vital time element"; the "time element" in every essential was submitted by the other questions, particularly question No. 4. Nor, when construed in connection with the other issues submitting "discovered peril," was it subject to the following exception: "* * * that said issue did not submit the proper question presented by the evidence, but submitted just the reverse; that is, the court in Issue No. 2 asked whether, after discovering the presence of the deceased at said crossing, the engineer realized that the said deceased was in a position of peril at the time of such discovery, which allowed the jury to answer "Yes," if they believed that any time after seeing J. C. Davis at the crossing, the engineer realized that he was in a position of peril, and the realization, under the court's question, could have been after the train had stopped or two months after the date of the collision, when the proper issue was whether or not the engineer actually realized that J. C. Davis, was in a position of imminent peril at such a time that the engineer, by the use of the means at hand, could have averted the collision."

Issue No. 4 was not multifarious in submitting conjunctively "discovery" and "realization." Appellee was required to establish the affirmative of both of these issues. Nor was issue No. 4 made multifarious by the following language: "* * * by the use of the means at his command, that is to say, by blowing the whistle, ringing the bell, sounding the sirene, stopping or reducing the speed of the train, having due regard for his own safety and that of his train, its passengers and crew, have avoided injuring the deceased, J. C. Davis."

On the issue submitted, the engineer was required, in the exercise of ordinary care and "having due regard for his own safety and that of his train," to use the means at his command, not only by blowing the whistle but in all other respects submitted by this question. Nor was it on the

weight of the evidence—by the language used the court did not intimate to the jury that appellant's engineer discovered the deceased and realized his perilous position prior to the accident. It is our conclusion that all elements submitted by question No. 4 were raised by the evidence.

By question No. 36 the court submitted to the jury the issue whether "the deceased kept a lookout to the south"; by question No. 37, whether the deceased "failed to maintain a lookout to the south"; by question No. 38, whether "the deceased failed to listen for signals from trains approaching said crossing." Special Issue No. 36a was conditioned on an affirmative answer to Special Issue No. 36; Special Issue No. 37a, on an affirmative answer to Special Issue No. 37; Special Issue No. 38a, on an affirmative answer to Special Issue No. 38. We pretermit a discussion of appellant's assignments against these issues, because the judgment of the court has full support in the findings on the issue of discovered peril.

■ By questions Nos. 36c, 37c, and 38c the court submitted to the jury the issue of "sole proximate cause," predicated upon an affirmative answer to question Nos. 36, 37, and 38; the jury gave a negative answer to these questions and, under the court's charge, did not answer the questions submitting "sole proximate cause." The court had clearly defined the term "proximate cause," and, therefore, under the charge appellant was not injured by the failure of the jury to answer the questions submitting the issue of "sole proximate cause." The form of these questions did not advise the jury of the effect of their answers; as men of ordinary understanding they were compelled to know the effect of their answers—that information was given by the court's definition of proximate cause. Certainly, the court was required to define in its charge the term "proximate cause."

■ The issue of "sole proximate cause," insofar as it rested upon the issue of "lookout" and "the character of listening," of the deceased as he approached the crossing, was submitted by the questions just reviewed; therefore the court did not err in refusing to submit the two following questions:

(a) "Do you find from a preponderance of the evidence that the sole, proximate cause of the collision in question was the character of lookout which J. C. Davis kept towards the south as he neared defendant's tracks?

(b) "Do you find from a preponderance of the evidence that the sole proximate cause of the death of J. C. Davis was the character of listening he did as he approached the crossing?"

■ Appellant's twentieth and last proposition is that the judgment of the lower court, awarding appellee $17,091.65, "as damages for the death of J. C. Davis," was excessive. The assignment is overruled. The statement made above of the facts of this case satisfactorily supports the award.

The basic facts of this case are given in the first sentence of the opinion. The charge of the court consumes pages 34–67 of the transcript and, so stated on oral argument, submitted 135 special issues to the jury. Appellant's objections and exceptions to the court's charge consume pages 68–118 of the transcript. This is not said in criticism of the able court and counsel who tried the case, but to demonstrate, when contrasted with the Sterling Case, where a judgment of $62,400 was affirmed, Beaumont, S. L. & W. R. Co. v. Sterling, Tex.Civ.App., 260 S.W. 320— a railroad crossing case, submitted on 12 special issues—that something has happened to our trial procedure.

The judgment of the lower court is in all things affirmed.

Affirmed.

## On Rehearing.

We have carefully reviewed appellant's motion for rehearing, and are of the opinion that all our legal conclusions as stated in the original opinion are well supported by authority.

■ On authority of Rosenthal Dry Goods Co. v. Hillebrandt, Tex.Com.App., 7 S.W.2d 521, followed by this court in Texas & N. O. R. Co. v. Owens, Tex. Civ.App., 54 S.W.2d 848; United States F. & G. Co. v. Lindsey, Tex.Civ.App., 66 S.W.2d 419, we reviewed appellant's propositions on the issues of "new and independent cause" and "sole proximate cause," as against appellees' counter propositions that these issues were not raised by the evidence; since the court charged on these issues, as we understand the Hillebrandt Case, it is immaterial that they were not raised by the evidence. For that reason, we have not given the testimony as it relates to these issues. But it is proper for

us to say, as a conclusion of law on the whole record, that the testimony upon which this case was tried in the lower court, raised neither the issue of "new and independent cause" nor "sole proximate cause," and that the testimony was so fully developed on the trial of the case as to preclude the probability that these issues could be raised on another trial. The case was submitted to the jury on 135 special issues, and it does not appear reasonable to us that appellant could have suffered any material injury by the refusal of the court to submit two more special issues—making a total of 137—on the issue of sole proximate cause, nor that it was injured by the manner in which this issue was submitted.

 Appellees ask conclusions of fact on certain propositions not reviewed in our opinion. This motion is refused; the points suggested by appellees in this motion will be available to them in the Supreme Court without conclusions by us, if writ of error should be granted.

The motion for rehearing is overruled.