**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY of Texas, Appellant,**

v.

**Letha MONTGOMERY, Individually and as Next Friend for Johnny Montgomery, et al., Appellees.**

No. 15990.

Court of Civil Appeals of Texas.

Fort Worth.

April 3, 1959.

Rehearing Denied May 1, 1959.

William A. Thie, Gen. Counsel, Missouri-Kansas-Texas Railroad Company of Texas, Denison, Benson & Benson, Bowie, and

Howell, Freels, Elliott & Nall, and Ralph Elliott, Denison, for appellant.

Peery & Wilson, Walter E. Steimel and Kearby Peery, Wichita Falls, for appellee.

RENFRO, Justice.

As a result of a railroad crossing collision between a pick-up truck, driven by Luther Montgomery, and a Missouri-Kansas-Texas Railroad motor-car train, Montgomery was killed. Suit was brought against the Railroad by Montgomery's widow and his surviving minor children. Plaintiffs' case was submitted to the jury on the theory of discovered peril. All issues on discovered peril were answered favorably to plaintiffs and all defensive issues were answered adversely to defendant. The verdict awarded a total of $54,300 for plaintiffs.

The defendant urges that its motion for instructed verdict and motion for judgment non obstante veredicto should have been granted because there was no evidence raising the issues of discovered peril.

■ We must of course accept the evidence and permissible inferences therefrom most favorable to the verdict, and disregard all evidence and inferences favorable to the defendant. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; White v. White, 141 Tex. 328, 172 S.W.2d 295. We must also recognize it was within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365.

The collision occurred in mid-morning about three miles west of Nocona. Defendant's train was a Budd car, consisting of a single unit divided into compartments. The train was traveling in a westerly direction and the pickup was traveling southerly on a narrow graveled "country" road.

The pickup was struck back of the driver's seat.

When the train approached within 600 feet of the crossing, traveling at 39 miles per hour, the engineer saw the pickup approaching the crossing at a distance of 300 feet, traveling 20 or 25 miles per hour. The pickup was in the view of the engineer from that time until the collision. According to the engineer: Deceased did not slow down at any time, did not change his speed; when train was 300 feet from crossing and deceased 150 feet, engineer did not apply brakes; at 200 feet for train and 100 feet for pickup, engineer was watching pickup, but did not slow up; driver of pickup was not looking in direction of train; engineer made no effort to apply brakes until he was within 150 feet of crossing. Asked about his experience with automobiles approaching crossings, the engineer answered: "On this particular occasion it was a little different to anything that I have ever witnessed. Now, ordinarily when we see a car approaching a track and we commence to putting out warning, blowing the whistle, ringing the bell, every one that I have ever seen up until this one, they would either speed up and try to beat me or they would commence trying to stop. Sometimes they would get stopped and sometimes they have me stopping. But this particular guy, * * * if he ever changed his speed one way or the other I couldn't see any difference in it from the time that he come in sight of me until we had the collision." By deposition, introduced in evidence, the engineer testified he could stop the train within 400 feet. He testified he was at least 150 feet from the crossing when he applied the brakes, that chances were he was within 100 feet when the brakes took full effect.

Measurements taken after the collision showed the rear end of the train to be 405 feet beyond the crossing. Thus, adding the 90 foot length of the train, it traveled 495 feet beyond the crossing. Although the engineer testified he had heard since the collision that the train could not be stopped

within 400 feet, the credibility of the witness and weight of his testimony were within the province of the jury, and they could believe from the evidence that the engineer did not apply his brakes before reaching the crossing.

The jury could believe from the evidence of the engineer that he could have applied the brakes, after realizing deceased was probably not going to stop, in time to have slowed the train enough for deceased to complete the crossing. In view of the evidence as to the distance traveled beyond the crossing the jury could believe that he did not so apply the brakes. We think the following quotation from Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561, 564, is pertinent to the instant case: "Since the automobile was hit on the rear fender and lacked only 3 or 4 feet of crossing the track in safety, the jury could reasonably have concluded that an application of the emergency brakes at any time before the train reached the crossing would have afforded the necessary time for the automobile to pass over the track unharmed. The duty rested on the train operatives to slacken the speed of the train even if it could not be stopped before reaching the crossing." In the instant case the pickup was struck in the rear. If the train had decreased its speed to any appreciable extent the pickup would have completed the crossing with safety. The jury could believe the engineer's testimony that the brakes would take hold within 50 feet, and disbelieve his testimony that he applied the brakes 150 feet before reaching the crossing. Again, quoting from the Ford case, supra, "Even allowing for normal reaction time it yet appears that a prompt application of the emergency brakes might have allowed the plaintiff's automobile to pass over the track in safety."

■ A careful study of the record convinces us that there is some evidence of probative force to support the jury's findings and the defendant's points of no evidence are overruled. Ford v. Panhandle & Santa Fe Ry. Co., supra; Creech v. Thompson, Tex., 297 S.W.2d 817.

■ The defendant requested the court to define "Perilous Position" in connection with the issues given. The court did not err in refusing to give such definition. Burlington-Rock Island R. Co. v. Davis, Tex.Civ.App., 123 S.W.2d 1002; Dallas Railway & Terminal Co. v. Redman, Tex. Civ.App., 113 S.W.2d 262.

■ It is contended the court erred in refusing to define "present value" in connection with the damage issues. The record in this case did not require such definition. 13 Tex.Jur., p. 600, sec. 361; Bull-Stewart Equipment Co. v. Myers, Tex.Civ. App., 102 S.W.2d 241; Houston Belt & Terminal R. Co. v. Davis, Tex.Civ.App., 19 S.W.2d 77.

Defendant's points 6, 7, 8 and 9 are based on alleged improper jury argument by plaintiffs' attorney. We have read all the evidence adduced at the trial and the portions of plaintiffs' attorney's argument as reflected in the bills of exceptions. We have concluded the arguments of which complaint was made were deductions and inferences which he could legitimately make. Pool v. Gilbert, Tex.Civ.App., 199 S.W.2d 798. In any event the argument was not such as to warrant a reversal under the provisions of Rule 434, Texas Rules of Civil Procedure.

The judgment is affirmed.