John E. DAUGHERTY et al., Appellants,

v.

Johnnie McDONALD, Appellee.

No. 16767.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 28, 1966.

Joe J. Johnson, Joe J. Johnson, Jr., John E. Daugherty, Fort Worth, for appellants.

L. Clifford Davis, Fort Worth, for appellee.

## OPINION

RENFRO, Justice.

The plaintiff, Johnnie McDonald, sued John E. Daugherty and others to cancel an agreement of employment and power of attorney executed by plaintiff and Daugherty on August 16, 1963. For convenience, Daugherty will be referred to as defendant.

A jury found, in answer to issue No. 1, plaintiff did not on August 16, 1963, have sufficient mental capacity to understand the nature and effect of his act and the business he was transacting, and, in answer to issue No. 3, plaintiff did not, at a time when he had recovered his mental capacity, ratify said contract.

Judgment was rendered for plaintiff on the verdict.

On appeal defendant contends in his first point of error that the finding of incompetency should have been set aside and judgment non obstante veredicto rendered for him; that the finding was against the great weight and preponderance of the evidence; and in his second point contends there was no evidence to support the jury's finding that plaintiff did not ratify the agreement of August 16, 1963.

The contract in issue, dated August 16, 1963, gave defendant authority, among other things, to bring suit to recover for plaintiff a farm located near Mansfield in Tarrant County.

As presented in the brief of defendant, the first point must be treated as a no evidence point on the finding on incompetency, as well as a contention the finding was against the great weight and preponderance of the evidence. The second point, on ratification, is a "no evidence" point of error.

In considering the "no evidence" point we of course are concerned only with the question whether there is any evidence of probative value to support the verdict, and must of course accept the evidence and permissible inferences therefrom most favorable to the verdict, and disregard all evidence and inferences favorable to the defendant. Missouri-Kansas-Texas Railroad Co. v. Montgomery, 323 S.W.2d 360 (Tex.Civ.App., 1959, ref., n. r. e.); Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); White v. White, 141 Tex. 328, 172 S.W.2d 295 (1943). To determine whether a finding is against the great weight and preponderance of the evidence, we consider all the evidence in the case.

The following is a summary of the evidence as it applies to both points of error.

It is undisputed that plaintiff, an elderly man, never learned to read and could write only his name. Following a stroke sustained on August 12, 1963, he can no longer write his name but uses an "x" for his signature.

Plaintiff testified: he had a stroke on August 12, 1963. He could not remember whether he went to a hospital. He could not remember defendant visiting him on August 16; did not remember placing his mark on any instrument; he never told defendant to sue a man named Moore to recover the farm, and did not know such a suit had been brought; did not know defendant was paying any of his expenses; thought "people" were sending him money after his stroke; did not remember signing anything on August 16; after the stroke next thing he knew he was "down to the home" and did not know why he was there.

The contract of August 16, in the body thereof, recited that plaintiff was "completely illiterate * * * unable to write" and that plaintiff "on the 12th of August * * * suffered a paralytic stroke * * and (is) incapable of attending to any business or even sign his name any longer."

Plaintiff's witness Weber, nursing home operator, testified plaintiff was admitted to the Home on August 21 and stayed ten or eleven days; plaintiff could not carry on an understandable or rational conversation; in his opinion plaintiff did not have sufficient mental capacity to understand an ordinary business transaction.

A clinic report from John Peter Smith Hospital shows that on August 13 notation was entered concerning plaintiff: "Senile & talks in grunts. Apparently had stroke 3 days ago. * * *"

Witness C. M. Johnson, friend and business associate of plaintiff, testified: he took plaintiff to hospital on August 11; by the 13th plaintiff was physically and mentally worse; on August 16 plaintiff could not hear and could not talk; since plaintiff left the Weber Home witness had attended to plaintiff's business; in his opinion plaintiff did not, on August 16, have sufficient mental capacity to handle a normal business transaction.

Defendant called as a witness Dr. Williams, who testified: he examined plaintiff at the Weber Home; plaintiff's stroke was a severe one; his hearing was affected as was his ability to talk; he did not know plaintiff's condition on August 16; when he saw plaintiff was of opinion he was mentally competent as of that time, but witness did not know whether at that time plaintiff could understand an ordinary business transaction; he saw plaintiff shortly before the trial of this case and the only advance he saw in plaintiff's condition was the fact he could sit in a wheel chair.

For defendant, Wilkins, notary public, testified: he took plaintiff's acknowledgment to the August 16 instrument, read the instrument to plaintiff, asked him if he was signing of his own free will. Plaintiff answered "yes" and that he understood it.

China Lewis, called by defendant, testified plaintiff could not talk after the stroke, that it was three months before plaintiff "come back to hisself and had a clearly decision about anything."

Called by defendant, the witness Henderson testified plaintiff, "same week" as plaintiff's stroke, told him defendant would look after the farm; he visited plaintiff every day, he could always talk; his opinion, as to plaintiff's capacity to understand an ordinary business transaction, "Well, in my opinion he could. He could talk—he could answer."

A welfare worker testified she could, during plaintiff's convalescence, understand some things plaintiff said but she had to have help from plaintiff's friends to understand all he said.

Witness Nelson, called by defendant, testified he saw plaintiff immediately after the stroke; plaintiff could talk; witness understood plaintiff and plaintiff understood him; plaintiff could understand ordinary business transactions; both he and defendant read the August 16 instrument to plaintiff, plaintiff said he understood it; plaintiff owed witness a $2,000 note and witness was a beneficiary in plaintiff's will; no copy of the will (made at a later date) nor the contract was left with plaintiff "because he can't read"; witness was asked of plaintiff, "Do you contend now (date of trial) that he's incapable of handling his business?" He answered, "Yes, sir—." "He hasn't recovered any?" "No, I don't think he has."

Witness Greenfield, called by defendant, identified a number of instruments pertaining to the farm. He was asked where he saw plaintiff following the stroke and answered that he saw him one time at his home and the other time at a rest home. Plaintiff was unable to talk at those times.

Defendant testified: he agreed in June of 1962 to take plaintiff's case regarding the farm; he worked diligently on plaintiff's affairs in an effort to salvage something for plaintiff; plaintiff had suffered a series of financial set-backs; upon hearing of plaintiff's stroke he visited him; "It was really pitiful. He had a very bad stroke but he was glad to see me. He could talk but in a limited way on account of his paralytic stroke had affected the muscles of his throat, but he recognized me and we talked and I talked. * * *" "What business matter did you discuss with him?" Answer: "The progress—first, the progress that had been made on getting his old age assistance raised. * * * Then the matter of the power of attorney which I had put off writing would have to be made as we had discussed on the basis of the terms we had discussed previously on many occasions. He agreed to that. I said then I would go and get it drawn up and bring it to see if it were satisfactory"; he dic-

tated the instrument to a public stenographer on the 14th or 15th and took it to plaintiff on the 16th; plaintiff was in bed; he told plaintiff he had drawn up the power of attorney and "it gave me every possible power to act for him, every possible power as had been agreed on * * *"; whereupon he asked plaintiff if he understood it and the plaintiff said "yes", but he wanted Nelson to read it because he had been accustomed to having Nelson read; Nelson read it to plaintiff who said it was satisfactory, whereupon Nelson went for a notary; upon the arrival of the notary the instrument was signed by plaintiff with his "x" mark; the plaintiff seemed to understand the transaction very well. Defendant was asked, "Did you give Mr. McDonald a copy of any of the instruments that you had him sign?", to which he answered, "No, sir. Why should I? Couldn't read it or couldn't keep it." Defendant testified as to plaintiff's condition as of August 16, "* * * mentally he was sound and could tend to business through me."

An attorney who was associated with defendant in the current law suit testified that he did not know plaintiff on August 16, but met him in December, 1963, talked with him and gained information which he used in a motion for summary judgment in another suit plaintiff had pending and that plaintiff executed the accompanying affidavit to the motion; that plaintiff told him he had signed a contract in August employing defendant.

Plaintiff's testimony, to which we have heretofore referred, is in some respects vague and inconclusive. To some questions he gave three or more answers as "no," "yes," "I don't remember." His testimony, however, was consistent with his contention that he did not remember signing any of the instruments about which he was questioned.

It is within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony, and

to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Austin Fire Ins. Co. v. Adams-Childers Co., 246 S.W. 365 (Tex.Com.App., 1923). It may accept part of a witness' testimony and reject the remainder, if the facts of the case justify such action. Missouri Pacific Railroad Company v. Mendoza, 337 S.W. 2d 622 (Tex.Civ.App., 1960, ref., n. r. e.). The trier of facts can accept in part and reject in part the conclusions of an opinion witness. The court will look to all the testimony of the witness to determine its legal sufficiency to support the findings of judge or jury that are essential to the case of the prevailing party. Travelers Ins. Co. v. Blazier, 228 S.W.2d 217 (Tex.Civ. App., 1950, dism.); Varnado v. City of Groves, 329 S.W.2d 100 (Tex.Civ.App., 1959, ref., n. r. e.); Austin Fire Ins. Co. v. Adams-Childers Co., 246 S.W. 365 (Tex. Com.App., 1923); Henderson v. Smith, 354 S.W.2d 429 (Tex.Civ.App., 1962, no writ hist.).

■ In view of the evidence, we think defendant cannot seriously contend that issue No. 1 should have been disregarded. The court did not err in refusing to set aside the issue and render judgment non obstante veredicto.

■ We have read the statement of facts and exhibits. The evidence in the case does not support defendant's contention that the finding that plaintiff did not have sufficient mental capacity to understand the nature and effect of his act in signing the instrument of August 16 was against the great weight and preponderance of the evidence.

■ This court has the power to grant a new trial where the finding of the jury or the court is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust, but we are not authorized to substitute our judgment for that of the jury or the court simply because we might have

reached a different conclusion on the facts. Dyer v. Sterett, 248 S.W.2d 234 (Tex.Civ App., 1952, no writ hist.); Continental Bus System, Inc., v. Biggers, 322 S.W.2d 1 (Tex.Civ.App., 1959, ref., n. r. e.); Donnell v. Acker, 343 S.W.2d 718 (Tex.Civ. App., 1961, no writ hist.); Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017 (1950); 4 McDonald Texas Civil Practice, p. 1459, § 18.15; Rule 328, Texas Rules of Civil Procedure; Adams v. Houston Belt & Terminal Railway Company, 405 S.W.2d 838 (Tex.Civ. App., 1966).

■ Defendant's contention there was no evidence to uphold the jury finding that plaintiff did not subsequently ratify the August 16 contract is also overruled.

■ Ratification, in a situation such as we have before us, may be either express or implied, but it must result from acts clearly evidencing an intention to ratify. To constitute ratification, the ratifying party must intentionally accept and agree to all material terms of the contract. Moreover, there can be no ratification without full knowledge of the facts that make the contract voidable. 13 Tex.Jur.2d, pp. 494-5, § 265.

Plaintiff testified he did not remember making his mark on the contract of August 16, did not remember agreeing to any such contract, and did not remember subsequent agreements or contracts. Defendant admitted he did not leave a copy of the contract with plaintiff. The jury heard all the witnesses and saw them as they testified. The jury, bearing in mind plaintiff's evidence as a whole and the testimony of other witnesses, could believe plaintiff was never mentally competent to ratify. The evidence was such as to support a belief by the jury that plaintiff did not know he signed the contract. The jury could believe that plaintiff, based on evidence in the record, never knew of the contract and never did, if he did learn of it later, have full knowledge of the facts that

made the contract voidable, or that he never regained sufficient mental competency to ratify.

■ The jury is not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded if the record discloses any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the same. See 24 Tex. Jur.2d, p. 357, § 705, and cases cited.

Since point two is a no evidence point we have not attempted to set out all the evidence and arguments of defendant on the question of ratification.

We might well have returned a different verdict had we been triers of the facts. We are aware, however, that "Whoever undertakes to determine a case solely by his own notions of its abstract justice, breaks down the barriers by which rules of justice are erected into a system, and thereby annihilates law." Duncan v. Magette, 25 Tex. 245 (1860).

The jury has spoken and, in view of all the evidence before us and in the light of the cited authorities, we are not authorized to disturb its findings.

All points of error are overruled and the judgment affirmed.

Affirmed.